IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| TAMMY G. MELVIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:17-cv-00852-LSC |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Tammy G. Melvin, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Ms. Melvin timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Melvin was fifty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education. (Tr. at 685.) Her past work experiences include employment as a loan department supervisor, loan

department processor, loan clerk, receptionist, data entry clerk, reservation clerk, and payroll clerk. (Tr. at 248-58.) Ms. Melvin claims that she became disabled on October 18, 2013, due to attention deficit disorder, major depressive disorder, anxiety/panic disorder, headaches, obesity and degenerative disc disease of the lumbar spine. (*Id.*)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational

requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's

impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Melvin was insured through the date of his decision. (Tr. at 22.) He further determined that Ms. Melvin has not engaged in SGA since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's attention deficit disorder, major depressive disorder, anxiety/panic disorder, headaches, obesity, and degenerative disc disease of the lumbar spine are considered severe based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 23.) With regard to Plaintiff's RFC, the ALJ determined that she can perform light work as is defined in the regulations with the following

additional restrictions: she can frequently use bilateral foot controls, frequently reach overhead with her right dominant hand, and frequently climb ramps and stairs but never climb ladders or scaffolds; Plaintiff can frequently stoop and crouch, should never be exposed to unprotected heights, dangerous machinery, dangerous tools, hazardous processes, or operate commercial motor vehicles; Plaintiff is limited to remembering short simple instructions and precluded from dealing with detailed or complex instructions; Plaintiff can do simple routine repetitive tasks but is unable to do detailed or complex tasks and would be limited to making simple work-related decisions; Plaintiff should have no more than occasional interaction with the general public, but could have frequent interaction with co-workers and supervisors; Plaintiff could accept constructive non-confrontational criticism, work in small group settings, and accept changes in the work place setting if introduced gradually and infrequently; Plaintiff would be unable to perform assembly line work with production rate pace but could perform other goal-oriented work; and in addition to normal workday breaks, Plaintiff would be off-task approximately five percent of an eight-hour workday in non-consecutive minutes. (Tr. at 24).

According to the ALJ, Ms. Melvin is unable to perform any of her past relevant work, she is an "individual closely approaching advanced age," and she

has a high school education, as those terms are defined by the regulations. (Tr. at 33.) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used the Medical-Vocational Rules as a guideline for determining that there are a significant number of jobs in the national economy that she is capability of performing, such as marker, cleaner or housekeeper, and garment sorter. (Tr. at 34.)

The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (*Id.*)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. Melvin alleges that the ALJ's decision should be reversed and remanded because the ALJ's credibility determination was allegedly flawed and because he erred in giving little weight to the opinion of her treating psychiatrist.

## A.     Credibility Determination

Plaintiff generally alleged crippling fatigue, malaise, drastic mood shifts, and memory problems. (Tr. at 71-73.) More specifically, she testified that she goes out about once a week. (Tr. at 52). She reported she goes out as late as midnight to get groceries so she will not run into anybody. (Tr. at 53). Plaintiff explained that she went on several interviews in 2013 and the first part of 2014 but she cried in every one of them. (Tr. at 54). She reported that since her electroconvulsive therapy, she has a really hard time grasping words and terms. (Tr. at 54). Plaintiff testified she spends a lot of her time sleeping. (Tr. at 71). According to Plaintiff, she has problems communicating and coming up with words. (Tr. at 72). She explained that she has a horrible time with maintaining focus and concentration. (Tr. at 73). Plaintiff testified that she has approximately four bad days out of a week where she is unable to carry out her daily activities. (Tr. at 78.)

When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of her alleged symptoms

or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); SSR 96-7p;[1] *Wilson v. Barnhart*, 284 F.3d 1219, at 1225–26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 416.929(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26. This entails the ALJ determining a claimant's credibility with regard to the allegations of pain and other symptoms. *See id.*

The ALJ must "[explicitly articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore v. Barnhart*, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005). When the reasoning for discrediting is explicit and supported by substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

---

[1]     Effective March 28, 2016, the Commissioner replaced SSR 96-7p with SSR 16-3p. The Commissioner explained that the new ruling "eliminat[ed] the use of the term 'credibility' from [the Social Security Administration's] sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." SSR 16-3p at *1-2. Neither party has asserted that SSR 16-3p applies retroactively to Plaintiff's claim in this case, which was decided before March 28, 2016.

In making the credibility evaluation, the Commissioner considers objective medical evidence and information from the Plaintiff and treating or examining physicians, as well as other factors such as evidence of daily activities, the frequency and intensity of pain, any precipitating or aggravating factors, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529, 416.929. A credibility determination is a question of fact: like all factual findings by the Commissioner, it is subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986).

In this case, the ALJ properly followed the two-step process in assessing Plaintiff's alleged symptoms and ultimately found that her complaints of disabling pain were not entirely credible. (Tr. at 31.) The ALJ articulated several reasons for discounting Plaintiff's credibility despite her mental limitations. First, while the ALJ acknowledged that she has been treated for attention deficit disorder, major depressive disorder, and anxiety disorder, he correctly noted that her treatment notes do not show such severe symptoms or limitations as she alleged. (Tr. at 36). Overall, her treating psychiatrist Dr. Simon McClure's treatment notes reflect

Plaintiff had only mild to moderate mental limitations. Dr. McClure reported on many occasions that Plaintiff was neat, cooperative, had a euthymic mood, normal affect, her sensorium was intact, her judgment/insight were good, her thinking was goal directed, and she denied suicidal ideation, homicidal ideation, hallucinations, and delusions. (Tr. at 513-15, 552, 556-57, 598, 600, 671, 672, 706). When Plaintiff reported increased symptoms, Dr. McClure adjusted her medications and noted subsequent improvement. (Tr. at 552-55, 597-98, 599).

Additionally, despite Plaintiff's allegations of sleeping for multiple days and memory loss, the ALJ noted that she only rarely complained of such issues to her treating physicians. Neither Dr. McClure, her treating psychiatrist, nor Dr. Toner, another treating physician, ever categorized her reported fatigue or memory problems as very serious or disabling. (Tr. at 522, 599, 670, 705). Additionally, Dr. Waltz, a consulting psychological examiner, reported in October 2015 that Plaintiff had no limitations in her ability to understand, remember, and carry out simple instructions. (Tr. at 688). On testing, Dr. Waltz reported Plaintiff's concentration, attention, and memory were adequate. (Tr. at 685).

The ALJ also reviewed the medical documentation related to Plaintiff's hospitalization in March 2015 for "depression with plan to commit suicide." (Tr. at 603). During her admission, her medications were adjusted, and she received

electroconvulsive therapy. (*Id.*) Although Plaintiff alleged that the therapy did not work, the hospital discharge report contradicts her assertion. Specifically, Plaintiff had no side effects from the therapy, received significant improvements, and was stable at discharge. (*Id.*) Plaintiff reported that subsequent outpatient electroconvulsive therapy treatments were also helpful. (Tr. at 670).

The ALJ also took note of Dr. Waltz's findings on examination in October 2015. She reported Plaintiff had only mild restrictions on her ability to make judgments on simple work-related decisions and only mild to moderate limitations in her ability to understand, to carry out and to remember instructions and to respond appropriately to supervision, co-workers, and work pressures in a work setting, and would benefit from vocational, employability, and/or social skills training (Tr. 686-87, 688-89).

The medical record reveals that Plaintiff's symptoms worsened when she was less than fully compliant with her medications and treatments. (Tr. at 670, 702). The regulations provide that a claimant may be denied benefits for failing to follow prescribed treatment without good reason. 20 C.F.R. §§ 404.1530, 416.930; *see Crawford*, 363 F.3d at 1159. In contrast, when Plaintiff did take her medications as prescribed, she consistently reported to Dr. McClure that her symptoms were stable. (Tr. at 600, 671, 672, 684, 706). *See* 20 C.F.R. §§ 404. 1529, 416.929

(Commissioner considers the effectiveness of any medications claimant has taken to alleviate pain).

Finally, the ALJ also took note of Plaintiff's self-reported daily activities in assessing her overall credibility. Plaintiff reported that she lives alone, balances her limited resources, does chores, crafts, and drives. (Tr. at 51, 66-67, 71, 238, 686). Although not dispositive, a claimant's daily activities may show that the claimant's symptoms are not as limiting as alleged. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Dyer*, 395 F.3d at 1212. In evaluating a claimant's testimony, the Eleventh Circuit has held the ALJ should also consider the claimant's daily activities, among other things. *See e.g., Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 513 (11th Cir. 2011).

In sum, there was substantial evidence in the record to support the ALJ's credibility determination, and reversal on this ground is not warranted.

**B.    Weight Given to Treating Psychiatrist's Opinion**

The record contains two opinions from Dr. McClure, Plaintiff's treating psychiatrist. (Tr. at 547-50, 693). Dr. McClure completed a Mental Residual Functional Capacity Assessment ("RFC") on July 15, 2014, wherein he addressed how Plaintiff's mental impairments affected her ability to perform certain job functions. (Tr. at 547-50). Dr. McClure noted he has been treating Plaintiff since

June 22, 2011, for major depressive disorder and attention deficit disorder. (Tr. at 547). He opined that Plaintiff had extreme limitations in her ability to maintain attention and concentration for extended periods; in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and in her ability to tolerate normal levels of stress. (Tr. at 548-50). He opined that Plaintiff had marked limitations in the following areas: in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; in her ability to sustain an ordinary routine without special supervision and in her ability to respond appropriately to changes in the work setting. (Tr. at 548-49). He opined that Plaintiff's impairments would substantially interfere with her ability to work a regular and sustained basis at least 20% of the time and she would miss approximately seven days of work per month due to her mental impairments. (Tr. at 550). He further opined that Plaintiff could not work on a regular and sustained basis due to being anxious and having poor concentration. (*Id.*)

Dr. McClure also submitted a one-page "To Whom It May Concern" letter on December 2, 2015, stating that Plaintiff

is currently stable on medications which have also included electroconvulsive therapy treatments. Ms. Melvin has displayed symptoms of suicidal ideations, paranoia, decreased sleep, anxiety, worsening depression, decreased appetite, memory loss, poor concentration and even anhedonia at times. Due to the severity of symptoms and her persisting condition it is likely that she would miss three or more shifts of work in a calendar month. Ms. Melvin is unable to search out or maintain competitive employment. She has reached maximum benefits of treatment and due to her symptoms will not be able to maintain employment.

(Tr. at 693.)

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or

has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources, and non-treating medical sources over non-examining medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."

*Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); see also

*Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good

cause" existed where the opinion was contradicted by other notations in the

physician's own record). On the other hand, the opinions of a one-time examiner or

of a non-examining medical source are not entitled to the initial deference afforded

to a physician who has an ongoing treating relationship with a plaintiff. *McSwain v.*

*Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). However, an ALJ "may reject the

opinion of any physician when the evidence supports a contrary conclusion."

*McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth*

*v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a

claimant is disabled, the claimant's residual functional capacity, and the application

of vocational factors "are not medical opinions, . . . but are, instead, opinions on

issues reserved to the Commissioner because they are administrative findings that

are dispositive of a case; i.e., that would direct the determination or decision of

disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the

doctors' evaluations of the claimant's "condition and the medical consequences

thereof, not their opinions of the legal consequences of his [or her] condition."

*Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's

findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

The ALJ gave little weight to Dr. McClure's July 2014 mental RFC assessment, noting that it was not consistent with his own treatment notes, which indicated that Plaintiff's abilities were "substantially greater," and some weight to his December 2015 letter because his statements were "somewhat consistent with the medical evidence of record, though again, appear to overestimate her limitations." (Tr. at 33.)

Substantial evidence supports the ALJ's decision here. As an initial matter, the check box form completed by Dr. McClure and his December 2015 letter provide little to no narrative or insight into the bases for the conclusions recorded. This form and letter, therefore, have little probative value. *See Spencer o/b/o Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (rejecting an opinion from a physician who merely checked boxes on a form without providing any explanation of his conclusions).

More importantly, however, as the ALJ noted, Dr. McClure's treatment notes reflect Plaintiff has only mild to moderate limitations, which contradicts his RFC assessment of extreme and marked limitations. (Tr. at 33, 513-15, 552, 556-57, 598, 600, 671, 672, 706). For example, Dr. McClure's treatment notes show that on

the same day he completed the RFC assessment form, in July 2014, Plaintiff reported to him that her sleep was good, her appetite was good, she had no hallucinations, she had no side effects from her medications, she was compliant with treatment, and she was feeling better with her new medications. (Tr. at 554.) On August 15, 2014, she reported that she was sleeping well with a good appetite, she was feeling better, she was not having hallucinations, and she was noted as neat, cooperative, and euthymic with normal affect. (Tr. at 553). By September 2014, Plaintiff denied psychosis, had lost some weight, looked and sounded better, and was neat and cooperative. (Tr. at 552.) Although in December 2014 Plaintiff was teary and alleged poor concentration and focus with decreased energy, she denied suicidal ideations. (Tr. at 599.) By February 2015 she reported sleeping and eating well, but had a flat affect and was teary. (Tr. at 597.) However, she was also goal directed, cooperative, and casual in dress, and had no suicidal ideations or hallucinations. (*Id.*) By April 2015 she had an "okay" mood and reported that she was applying for disability but was trying to get a part time job. (Tr. at 598.) In June 2015, Dr. McClure reported that she was "doing very well," was calm, neat, cooperative, and had a normal mood and affect, and he continued to diagnose her with attention deficit disorder and major depression. (Tr. at 671.) In September of that year she reported that she was trying to get a disability hearing and that she

was "not doing very well," but had been doing better for awhile due to the electroconvulsive therapy treatments. (Tr. at 670.) By December 2015 she reported to Dr. McClure that she was worried about her disability hearing and that she was positive for suicidal but that her parents and her children were a deterrent. (Tr. at 700-06.)

Other evidence of record undercuts Dr. McClure's dire conclusions as well. For example, as noted, on October 27, 2014, Plaintiff underwent a psychological evaluation conducted by Dr. Waltz. (Tr. at 684-90.) Plaintiff reported being depressed, but her attention and concentration were adequate. (*Id.*) She reported memory problems but had no problem describing that day's and the previous day's events and recalling major life events. (*Id.*) She obtained a Global Assessment of Functioning "GAF" score of 62, which indicates mild symptoms, such as depressed mood and mild insomnia. (*Id.*) *See* Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 32-34 (4th ed. Text Revision 2000) ("DSM"). Dr. Waltz reported Plaintiff had only mild restrictions on her ability to make judgments on simple work-related decisions and only mild to moderate limitations in her ability to understand, to carry out and to remember instructions and to respond appropriately to supervision, co-workers and work pressures in a work setting and would benefit from vocational, employability and/or social skills

training. (Tr. at 686-87, 688-89). The ALJ gave Dr. Waltz's opinion substantial weight because it was consistent with the other medical evidence of record.

In sum, the ALJ had good cause to give little weight to Dr. McClure's mental RFC assessment and letter because they were inconsistent with his own treatment notes and conflicted with the other medical evidence of record.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Melvin's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 19, 2018.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704